## YOUNGBLOOD v. JACKSON et al.

No.12776—Opinion Filed Oct. 7, 1924.

Rehearing Denied Dec. 16, 1924.

1. **Appeal and Error—Questions of Fact—Verdict — Conclusiveness.**

Where there is a conflict in the testimony, and the case is submitted to the jury under proper instructions, and the jury makes its finding thereon, its verdict will not be disturbed on appeal, if there is evidence tending to support the verdict.

2. **Vendor and Purchaser — Failure to Deliver Possession — Recovery by Vendee of Advance Payment.**

Where Y. listed a house and lot with M.,

a real estate agent, to sell, and M. made a contract with J., and after J. had paid $300 on the purchase price, and was to have possession on the 1st day of January, under his contract, and Y. is unable to deliver possession to him because Y. had not yet acquired title to the property sold and the sale fails for that reason, J. is entitled to recover the $300 paid on the purchase price from Y.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Oklahoma County; J. I. Phelps, Judge.

Action by Moody Jackson and C. A. McCreary against S. R. Youngblood. Judgment for plaintiffs, and defendant appeals. Affirmed.

W. J. Davidson, for plaintiff in error.

Robert Burns, for defendants in error.

Opinion by MAXEY, C. Moody Jackson, plaintiff below, brought suit against S. R. Youngblood, defendant below, to recover $300, money paid by Moody Jackson on the purchase price of a house and lot in Oklahoma City. The parties will be referred to as they appeared in the court below.

It appears that the defendant, Youngblood, on the 19th day of September, listed a house and lot located at 722 East Fourth street in the city of Oklahoma City, with C. A. McCreary to sell, and that on the 19th day of September, McCreary, acting as the agent of the defendant, Youngblood, made a contract to sell this property to the plaintiff, Moody Jackson. Under the terms of this sale, Jackson was to pay $300 by the 1st day of January following, and $40 a month each month thereafter until the full purchase price of $3,500 was paid. Jackson paid the $300 and was to have possession on the first day of January. When the time to give possession came, the defendant, Youngblood, commenced to put off the time of giving possession and told Jackson that he would like to have $1,250 as the first payment instead of the $300, and explained to him why he wanted the $1,250, and Jackson told him he would see if he could raise the money, and in a short time told Youngblood that he had made arrangements to borrow $950, so as to make the payment, $1,250, and asked for an abstract and a deed. Youngblood then explained that he did not have any deed to the property; that he had contracted to buy the place from Fanny Cox, and that she had died sometime about the latter part of September, or the first part of October; that he had paid $750 to her on the purchase price of $3,500, and was to assume the payment of two or three mortgages on the place; that he was to pay her $1,250 in cash, and assume these mortgages, and at the time of her death, he had only paid $750 on the purchase price, and that he could not give a deed until he got it through court, which would take two or three weeks. Jackson agreed to wait, and in the meantime,

Jackson, McCreary and Youngblood had gone together to the person from whom Jackson was to get his $950 loan, and Youngblood furnished an abstract, but when it was examined, the title was turned down because. Youngblood had no title, Jackson then demanded his $300 that he had paid on the place back from Youngblood. There is no question but what Youngblood received this $300. There is some controversy in the testimony as to just how it was paid, but the checks and receipts introduced in evidence show that Youngblood received $300. He would not return the money to Jackson, and the evidence shows that Youngblood never got a deed to the place until the 17th day of April, 1920, and he raised the money by executing a mortgage on the place with some building and loan company, and applied the loan to the payment of the mortgages on the place, and the balance due on the purchase price. Jackson in the meantime had sued for the return of his $300, and that is what this lawsuit is about. The case was tried before the court and a jury. There was judgment for the plaintiff, Jackson. Youngblood appealed and assigned as error the following:

(1) That the trial court erred in overruling an objection of plaintiff in error, S. R. Youngblood, to the introduction of any testimony on the part of plaintiff below.

(2) That the trial court erred in overruling the demurrer of S. R. Youngblood to plaintiff's evidence.

(3) That the trial court erred in the admission of incompetent testimony over the objection of this plaintiff in error, consisting of the written contract between McCreary and Jackson, and also the receipt from Youngblood to Golston, and the checks from McCreary to Youngblood.

These three assignments of error are all discussed together in brief of plaintiff in error, but nowhere in the brief does counsel discuss the evidence that he claims was admitted over his objection, or point out where the objection to any testimony that was objected to was in any way injurious to the defendant. We have examined the testimony from beginning to end, and we are unable to find any error in the admission of testimony, either for or against either of the parties. The receipts for the money received by Youngblood were introduced in evidence to show that Youngblood had received the $300 sued for, and Youngblood admits in his testimony that to the best of his recollection, he received $235, but his receipts show that his memory was at fault, because they show that he received the full $300. There was no objection or exceptions to any of the instructions given by the court, and the case is narrowed down to the one assignment of error, and that is the second, which is as follows:

"That the trial court erred in overruling the demurrer of S. R. Youngblood to plaintiff's evidence."

This demurrer was properly overruled because the plaintiff had undoubtedly made out a prima facie case; and the only question that appears to us. that could be reviewed under this record, is whether there is any evidence to support the verdict of the jury. The rule in this jurisdiction is too well settled to require the citation of authorities that where there is any testimony to sustain the verdict of the jury, the verdict will not be disturbed on appeal.

In this case, there is a conflict between the testimony of the plaintiff and the defendant, who were the only two witnesses who testified in the case, except McCreary. McCreary's evidence strongly supports the evidence and the theory of the plaintiff, and we think that there was ample evidence to support the verdict of the jury. Under the entire record, we are of the opinion that substantial justice has been done between the parties, and that the judgment of the trial court should, in all things, be affirmed.

By the Court: It is so ordered.